UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RBW STUDIO, LLC,

                              Plaintiff,

            – *against* –

STONEHILL & TAYLOR
ARCHITECTS, P.C., MICHAELIS
BOYD, INC., THE LIGHTSTONE
GROUP, LLC, BOWERY STREET
ASSOCIATES, LLC, PTY LIGHTING,
INC., *and* HPG INTERNATIONAL, INC.,

                              Defendants.

**OPINION & ORDER**

24 Civ. 3188 (ER)

Ramos, D.J.:

        RBW Studio, L.L.C. ("RBW") brings this action against Stonehill & Taylor Architects, PC ("Stonehill"), Michaelis Boyd, Inc. ("Boyd"), The Lightstone Group, L.L.C. ("Lightstone"), Bowery Street Associates, L.L.C. ("Bowery Street"), PTY Lighting, Inc. ("PTY"), and HPG International, Inc. ("HPG") (collectively, "Defendants"), alleging a claim for patent infringement against Lightstone and Bowery Street and a claim for unfair competition against all Defendants, Doc. 66.

        Before the Court is five of the six Defendants'[1] partial motion to dismiss the unfair competition claims in the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and to dismiss Stonehill, Boyd, and PTY, as to whom unfair competition is the only allegation.  Docs. 72, 72-1.  For the reasons set forth below, the motion is DENIED.

---

[1] The five Defendants moving to dismiss are Stonehill, Boyd, Lightstone, Bowery Street, and PTY.  *See generally* Doc. 72.  To the extent the Court discusses arguments made by "Defendants" in the instant motion to dismiss, the Court refers to all Defendants except for HPG.  HPG has requested an extension of time to respond to the second amended complaint until the Court decides the instant motion to dismiss, which the Court has granted.  *See* Docs. 75, 76.

## I.    BACKGROUND

### A.  Factual Background

The Court accepts the allegations in the second amended complaint as true for the purposes of this motion.  *See, e.g.*, *Koch v. Christie's International PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

### *1.  The Light Fixture*

RBW is a corporation specializing in lighting design and manufacturing.  ¶ 5.[2] Among its innovations is the Pastille sconce light fixture, one model of which has a distinctive three-bulb configuration on an oval back-plate in the Art Deco style of Old Hollywood.  ¶ 29.  The Pastille sconce is depicted here.  *See id.*



RBW first began developing the Pastille sconce in 2018.  ¶ 30.  Prior to applying for a patent, RBW invested "substantial financial resources, time, skill, labor and expertise into the research and development" of the fixture's design and production. ¶ 33.  RBW filed an application for a patent applicable to the design of the Pastille sconce on November 13, 2018.  ¶ 32; *see* Doc. 66-1, Ex. A.  The Pastille sconce is now protected by RBW's U.S. Patent No. D1,020,048 ("the '048 Patent"), which was issued by the United States Patent and Trademark Office on March 26, 2024.  ¶ 34; *see* Doc. 66-2, Ex. B.  At issue in this case is the use of light fixtures ("Accused Light Fixtures") in the Moxy Hotel located in the Lower East Side of Manhattan, which RBW alleges infringes the patented Pastille sconce.  *See, e.g.*, ¶¶ 3, 7.

---

[2] Unless otherwise noted, citations to "¶ _" refer to the second amended complaint, Doc. 66.

2. *The Parties*

RBW is a Delaware and New York limited liability corporation with its principal place of business in New York. ¶ 5. It specializes in lighting design, creating, manufacturing, and selling "a range of unique light fixtures incorporating novel designs that are protected by United States patents." *Id.* RBW previously did business as Rich Brilliant Willing, L.L.C. *Id.*

There are six defendants in this case. The first, Stonehill, is an architecture firm with its principal place of business in New York that "designed . . . the Accused Light Fixtures that were installed in . . ." the Moxy Hotel. ¶¶ 6–7. The second, Boyd, is an architectural and interior design firm incorporated in and with its principal place of business in New York that designed the interiors of the Moxy Hotel with the other Defendants. ¶¶ 9–10. The third, Lightstone, is a New York limited liability corporation with its principal place of business in New York that owns the Moxy Hotel. ¶¶ 12–13. The fourth, Bowery Street, is a Delaware limited liability company with its principal place of business in New York that is a part owner and/or operator of the Moxy Hotel, as well as the alleged "alter ego" of Lightstone. ¶¶ 14, 16–17. The fifth, PTY, is a lighting manufacturing firm with its principal place of business in New Jersey, that regularly does business in New York, which the complaint alleges designed, manufactured, and sold the Accused Light Fixtures installed in the Moxy Hotel. ¶¶ 18–20. The final Defendant, HPG, is a California corporation with its principal place of business in California which the complaint alleges "was the purchasing agent for the guest rooms at the Moxy Hotel and at all relevant times was acting as an agent for the Defendants." ¶¶ 21–22. The complaint also states that HPG regularly does business in New York. ¶ 24.

3. *The Dispute*

RBW and Lightstone had a preexisting relationship from as early as 2016 when RBW worked with Lightstone to design and supply light fixtures for a different Moxy Hotel location. ¶¶ 66–68. The shop drawings provided by RBW to Lightstone for that

earlier project, on which Lightstone's project manager signed off, expressly stated that RBW's products and drawings were proprietary and confidential and that "any reproduction in part or as a whole without the written permission of RBW . . . is prohibited." ¶¶ 66–67; Doc. 66-6, Ex. F at 3.

In October 2019, after RBW had applied for its patent for the Pastille sconce but before it had been issued, Taryn Jones,[3] a Project Manager at HPG, *see* Doc. 66-7, Ex. G at 2, emailed RBW to obtain a quote for the sconce. ¶ 70. The complaint alleges that Jones "affirmatively represented that there existed an agency relationship between HPG and the Moxy" by stating that she was the purchasing agent for the Moxy.[4] *Id.* In the email exchange, Jones stated that Boyd was the design firm for the project. Doc. 66-7, Ex. G at 4. The complaint notes that the emails sent by RBW to HPG contained a footer addressing the confidential and proprietary nature of the information and quote being provided.[5] ¶ 72. Believing that it had a relationship of trust and confidence with Lightstone given its previous work on another Moxy Hotel location, ¶ 69, in October 2019, RBW sold samples of the sconce to Bowery Street for its consideration for rooms in the Lower East Side Moxy Hotel location.[6] ¶ 35; Doc. 66-3, Ex. C. At all times

---

[3] Although RBW identifies a "Taryn James" in the complaint and opposition memorandum, the email communications submitted as exhibits to the complaint reflect that the HPG employee is named "Taryn Jones." *Compare* Docs. 66 and 78 *with* Doc. 66-7, Ex. G.

[4] Though Jones did not explicitly state that HPG was working as an agent of Lightstone and Bowery Street, *see* Doc. 66-7, Ex. G, the complaint establishes that the Moxy was owned and controlled by Lightstone and Bowery Street. ¶ 70.

[5] The footer stated: "This e-mail (including any attachments) is intended only for the exclusive use of the individual to whom it is addressed. The information contained hereinafter may be proprietary, confidential, privileged and exempt from disclosure under applicable law. If the reader of this email is not the intended recipient or agent responsible for delivering the message to the intended recipient, the reader is hereby put on notice that any use, dissemination, distribution or copying of this communication is strictly prohibited." ¶ 72; Doc. 66-7, Ex. G.

[6] The complaint states that the November 2019 invoice was billed to "Bowery Street Associates, LLC C/O HPG," ¶ 35, and that Bowery Street is an "alter ego" of Lightstone, ¶ 17, while the Defendants argue that RBW "does not plead it knew of Lightstone's involvement in the Moxy hotel project in 2019–2020," Doc. 72-1 at 11. However, one of the emails from RBW attached to the complaint indicates that RBW recognized that it had previously worked on a Moxy hotel. *See* Doc. 66-7, Ex. G at 7 ("Look forward to working with HPG on another Moxy project!"). This evidence plausibly supports RBW's claim that it recognized Lightstone as the known owner of the Moxy hotels, based on their previous relationship.

relevant to the complaint, RBW alleges that the sconces were solely available through direct communication with RBW and not through retailers. ¶ 63. The November 15, 2019 invoice for the sample sconces contained terms and conditions indicating that "RBW designs, images, and illustrations are protected by intellectual property rights in the U.S. and internationally, including design patents and registrations, copyright, and trademark . . . RBW actively protects and enforces its intellectual property rights; do not specify or utilize unauthorized copies of RBW products." ¶ 77; Doc. 66-3, Ex. C.

Thereafter, in July 2020, Stonehill specifically referenced the RBW sconce in a specification generated for construction of the Moxy Hotel; the item "SW.14," described as a "[d]ecorative three bulb Wall Sconce," had a note stating that RBW's sconce design was "used for design influence." ¶ 37; Doc. 66-4, Ex. D. The document also included a link to the page from RBW's website depicting the Pastille sconce with photographs and diagrams, including its dimensions. ¶ 37; Doc. 66-4, Ex. D; Doc. 72-4, Ex. B at 3, 8. Additionally, it specified that the manufacturer/supplier of the sconce was to be confirmed and would be "bespoke" despite depicting and referencing the RBW design. ¶ 83; Doc. 66-4, Ex. D.

On October 12, 2020, non-party Luparello & Sons, L.L.C. ("Luparello"), a New York electrical contractor acting as an agent of HPG, Boyd, Stonehill, Lightstone, and Bowery Street, obtained a quote for 647 Pastille sconces for $434,784 to be used in the Moxy Hotel. ¶ 38; Doc. 66-5, Ex. E at 2. However, the complaint alleges that after obtaining samples of the Pastille sconces and reviewing the price quoted by Luparello, Defendants Boyd, Stonehill, Lightstone, and Bowery Street, directly or through their agent HPG, "knowingly, intentionally and in bad faith engaged Defendant PTY and/or other contractors to improperly utilize proprietary information obtained from RBW in order to design, manufacture, and sell the Accused Light Fixtures . . . as cheaper substitutes to the authentic RBW Pastille™ sconces that had initially been presented to the Defendants." ¶ 39. The complaint further alleges that the Accused Light Fixtures

were then installed at the direction of those Defendants and are still being used in the Moxy Hotel for the commercial benefit of Lightstone and Bowery Street.  ¶ 40. Furthermore, PTY has posted videos on LinkedIn highlighting its participation in providing the Accused Light Fixtures.  ¶ 43.  Since the events leading to the allegations, the Moxy Hotel has received positive press and won Hospitality Design Magazine's Gold Key Award for midscale hotels.  ¶¶ 41–42.  The Accused Light Fixtures within the Moxy Hotel are depicted here.  ¶ 45.



The complaint argues that Lightstone and Bowery Street have infringed and continued to infringe the '048 Patent.  *See, e.g.*, ¶ 47.  The complaint further argues that all six Defendants, working in concert, misappropriated the proprietary information and financial resources invested by RBW in the development of the sconces in violation of the agreed upon Terms and Conditions of the November 15, 2019 invoice.  ¶ 88.  RBW alleges that they did so by having the Accused Light Fixtures manufactured by PTY for use in the Moxy Hotel, instead of purchasing the sconces pursuant to the quote they received from RBW.  *Id*.  The complaint alleges that, upon information and belief, the Defendants "directed PTY to produce a lighting fixture which it knew to be an unauthorized knock off of the RBW design."  ¶ 90.  The complaint argues that the Defendants acted in bad faith by sharing RBW's proprietary information with others and

by utilizing that information to produce fixtures which it knew to be a knockoff of the Pastille sconce.  ¶¶ 92–94.  This, the complaint argues, was done without the permission of, or compensation to, RBW.  ¶ 94.

### B.  Procedural History

RBW filed this action on April 26, 2024 against Stonehill, Boyd, Lightstone, and Bowery Street.  Doc. 1.  On June 17, 2024, RBW filed a first amended complaint, adding PTY and HPG as Defendants.  Doc. 26.  On July 15, 2024, Boyd filed its answer to the amended complaint, and asserted cross-claims against the other five Defendants.  Doc. 46.  On September 3, 2024, RBW filed a second amended complaint, Doc. 66, seeking an order permanently enjoining the Defendants from further acts of infringement and an order requiring Lightstone and/or Bowery Street to remove the Accused Light Fixtures from the Moxy Lower East Side.  *Id.* at 20–21.  RBW also seeks compensatory damages and lost profits, punitive damages, and attorneys' fees.  *Id.* at 21.

On September 17, 2024, Boyd filed notice of voluntary dismissal of its cross-claims pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  Doc. 68.  The following day, the Court dismissed Boyd's cross-claims without prejudice.  Doc. 69.

On October 15, 2024, all Defendants other than HPG moved to dismiss the claims for unfair competition and to dismiss Stonehill, Boyd, and PTY, as to whom unfair competition is the only allegation.  *See* Doc. 72; Doc. 72-1 at 5.  Defendants argue that RBW's unfair competition claims are preempted by federal patent law, that RBW has failed to state a claim for unfair competition, and that RBW improperly alleges the conduct of a single Defendant, HPG, against all Defendants.  *See generally* Docs. 72-1, 81.  On November 12, 2024, HPG requested an extension of time to respond to the second amended complaint until the Court decides the instant motion to dismiss.  The Court granted that extension on November 13, 2024.  Doc. 76.  Neither Lightstone nor Bowery Street has moved to dismiss RBW's patent infringement claims under 35 U.S.C. § 271.  *See* Doc. 78 at 9.  Therefore, at issue in the instant motion is whether RBW has

sufficiently pled claims of unfair competition against Stonehill, Boyd, Lightstone, Bowery Street, and PTY.

## II.    LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Koch*, 699 F.3d at 145. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). To state a plausible claim, the plaintiff must "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d. Cir. 2018) (quoting *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## III.    DISCUSSION

### A. Preemption

The Defendants' first argument in support of their motion is that the unfair competition claims are preempted by federal patent law. *See* Doc. 72-1 at 19.

To support that argument, they cite *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234 (1964), a case also involving a dispute over a light fixture design. *Id.* There, the Supreme Court held that "when an article is unprotected by a patent . . . state law may not forbid others to copy that article." *Compco*, 376 U.S. at 237 (citing *Sears, Roebuck &*

8

*Co. v. Stiffel Co.*, 376 U.S. 225 (1964)). The Supreme Court reasoned that the opposite holding would interfere with the Patent and Copyright Clause of the Constitution and the implementing federal statutes, which allow "free access to copy whatever the federal patent . . . laws leave in the public domain." *Id.* (citing U.S. Const. art. I § 8, cl. 8). Moreover, the Supreme Court noted in *Bonita Boats, Inc. v. Thunder Craft Boats, Inc.* that "the States may not offer patent-like protection to intellectual creations which would otherwise remain unprotected as a matter of federal law." 489 U.S. 141, 156 (1989). "A state law that substantially interferes with the enjoyment of an unpatented utilitarian or design conception which has been freely disclosed by its author to the public at large impermissibly contravenes the ultimate public goal of public disclosure and use which is the centerpiece of federal patent policy." *Id.* at 156–57. Such laws "represent[] a break with the tradition of peaceful co-existence between state market regulation and federal patent policy." *Id.* at 167. *See also Leatherman Tool Group Inc. v. Cooper Industries, Inc.*, 131 F.3d 1011, 1014 (Fed. Cir. 1997) ("[W]hile the patent laws provide the right to exclude others from making, using, or selling a claimed invention for a statutorily limited amount of time, if such rights could be but were not awarded under the patent laws, the states may not provide commensurate protection."); *20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*, 747 F.2d 81, 92 n.15 (2d Cir. 1984) ("A state may not, through its law banning unfair competition, undermine federal patent rights by prohibiting the copying of an article that is protected by neither a federal patent nor a federal copyright.").

However, "patent laws will not preempt [state law] claims if [the state law claims] include additional elements not found in the federal patent law cause of action and if they are not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law." *Rodime PLC v. Seagate Technology, Inc.*, 174 F.3d 1294, 1306 (Fed. Cir. 1999) (citing *Dow Chemical Co. v. Exxon Corp.*, 139 F.3d 1470, 1473 (Fed. Cir. 1998)).

Under New York law, "the essence of an unfair competition claim . . . is that the defendant has misappropriated the labors and expenditures of another." *Berman v. Sugo L.L.C.*, 580 F. Supp. 2d 191, 208 (S.D.N.Y. 2008) (quoting *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980)). "Unfair competition is a 'broad and flexible doctrine' that encompasses an 'incalculable variety of illegal practices.'" *Id.* at 208–09 (quoting *Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broadcasting System, Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982)). "Importantly, a claim of unfair competition must involve 'some element of bad faith.'" *Id.* at 209 (quoting *Saratoga*, 625 F.2d at 1044). "Although claims of unfair competition often allege misappropriation of trade secrets or ideas, a claim may be based on misappropriation of information not rising to that level, such as client lists, internal company documents, and business strategies." *Id.* (citing *LinkCo, Inc. v. Fujitsu, Ltd.*, 230 F. Supp. 2d 492, 501–02 (S.D.N.Y. 2002) (collecting cases)).

As made clear by the complaint, the Pastille sconce was not patented until March 26, 2024. ¶ 34. The conduct leading to RBW's claims of unfair competition occurred prior to the time when the sconce was patented. *See* ¶ 95. Under the standard that the Supreme Court announced in *Compco*, 376 U.S. 234, the Defendants argue that the unfair competition claim is thus preempted by federal patent law—put simply, that state law could not prevent the Defendants from copying the design of the Pastille sconce because RBW could have patented it but had not yet done so. *See* Doc. 72-1 at 19. In response, RBW asserts that there is an "additional element" in New York's unfair competition law which is not required in typical patent infringement claims, such that it is not preempted, namely that the defendants have acted in bad faith. *See* Doc. 78 at 21. RBW argues here that the Defendants acted in bad faith by using deceptive tactics to gain access to RBW's confidential information and samples which they then used to divert business opportunities away from RBW. *Id.* at 21–22.

The Federal Circuit has recognized unfair competition law and patent law as "distinct and independent bodies of law." *See Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368, 1373 (Fed. Cir. 1994). "The law of unfair competition generally protects consumers and competitors from deceptive or unethical conduct in commerce. Patent law, on the other hand, protects a patent owner from the unauthorized use by others of the patented invention, irrespective of whether deception or unfairness exists." *Id.* (internal citations omitted). The Defendants cite *Computer Associates International, Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992) to support their argument that RBW's allegations of bad faith cannot save the unfair competition claim from preemption. *See* Doc. 72-1 at 21. As the Defendants note, the Second Circuit remarked there that "[a]n action will not be saved from preemption by elements such as awareness or intent, which alter 'the action's scope but not its nature[.]'" *Altai*, 982 F.2d at 717 (quoting *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F. Supp. 1523, 1535 (S.D.N.Y. 1985)). However, the *Altai* court also noted that "many state law rights that can arise in connection with instances of copyright infringement satisfy the extra element test, and thus are not preempted . . . . These include unfair competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets." *Id.* (citations omitted). Indeed, courts have generally found claims for unfair competition under New York law not preempted when based on misappropriation theories. *See, e.g.*, *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 507 (S.D.N.Y. 2018) ("Plaintiff's unfair competition claim is not preempted to the extent it is premised on a misappropriation theory . . . because Plaintiff's misappropriation claim does not turn solely on allegations that Defendants infringed Plaintiff's patents."); *see also Hall v. Bed, Bath & Beyond, Inc.*, 705 F.3d 1357, 1372 (Fed. Cir. 2013) (holding an unfair competition claim not preempted where plaintiff alleged that he had given defendant samples of a product which the defendant then copied and sold).

11

For the foregoing reasons, the Court finds that a sufficiently-pled unfair competition claim would satisfy the extra element test, thus permitting it to proceed. In this case, RBW pursues a misappropriation theory based on more than mere allegations that the Defendants infringed its patents. It argues that the Defendants exhibited bad faith by ordering alternate designers to manufacture knockoffs of RBW's products in which RBW had invested significant time, labor, and resources. *See generally* Doc. 66. If sufficiently pled, RBW's claims for unfair competition would thus avoid preemption.

### B.  Unfair Competition Claim

The Defendants' second argument in support of their motion to dismiss is that RBW's allegations do not sufficiently support a claim for unfair competition. *See* Doc. 72-1 at 20–26. They argue that RBW's complaint is peppered with conclusory language about the light fixtures' proprietary nature but that RBW's sconce design was "neither kept secret nor protected by an intellectual property right." *Id.* at 20. In support of this proposition, the Defendants cite *Sorias v. National Cellular USA, Inc.*, 124 F. Supp. 3d 244 (E.D.N.Y. 2015), where the court noted that "hotel room designs . . . have been found to not be trade secrets . . . because, once marketed, these products are open to full public inspection." Doc. 72-1 at 20 (quoting *Sorias*, 124 F. Supp. 3d at 260 (internal citation omitted)). The Defendants emphasize that RBW's advertisements and website included photographs and imagery displaying the sconce in detail, including with dimensions of its relevant components. Doc. 81 at 5; *see* Doc. 72-4 at 3, 8. They further emphasize that RBW sold its products through public displays at its showroom where anyone in the public could view, photograph, and copy the sconce's features.[7] Doc. 81 at 5 (citing, inter alia, ¶ 35).

---

[7] In the email communications between the relevant parties, RBW's email signature indicates that it maintains a showroom in New York where some of its products are displayed. *See, e.g.*, Doc. 66-7, Ex. G at 3. Though RBW does not reference its showroom in its complaint, *see generally* Doc. 66, the Defendants reference it throughout their briefs. *See, e.g.*, Doc. 72-1 at 8; Doc. 81 at 4.

RBW argues that the information taken and utilized to craft the knockoff light fixtures was not in fact public, analogizing to *Hall*, 705 F.3d 1357 and *Bytemark*, 342 F. Supp. 3d 496 to support its claim. *See* Doc. 78 at 20, 23–25. In *Hall*, the plaintiff had left samples of his "Tote Towel" with the defendant while the patent for it was pending, and the defendant thereafter copied and sold the product. *See* 705 F.3d at 1370–71, 1361. The *Hall* court reversed the district court's dismissal of the plaintiff's unfair competition claim, among other claims, crediting the plaintiff's argument that the defendant "did not copy a publicly available product from the marketplace" but instead "copied his proprietary towel that he showed to [defendant] in the course of discussion of a business relationship." *Id.* at 1372. Similarly, in *Bytemark*, the defendants allegedly caused the plaintiff to disclose valuable intellectual property, trade secrets, and other confidential information under the guise of a partnership and then cut the plaintiff out of its business efforts while improperly using and disclosing its trade secrets and information to others. *See* 342 F. Supp. 3d at 507–08. The *Bytemark* court denied the defendants' motion to dismiss plaintiff's misappropriation-based claim of unfair competition based on those allegations. *See id.* at 508.

RBW alleges that the samples acquired by the Defendants were *not* publicly available: the sconce was not sold at retailers but instead could only be purchased via direct communication with RBW. *See* Doc. 78 at 13 (citing ¶ 63). Moreover, RBW emphasizes that the samples and pricing information related to the sconce were also only available through RBW and pursuant to the Terms and Conditions outlined in its communications with the Defendants. *See id.* (citing ¶ 79). Those communications, RBW argues, also stressed that the Defendants should not share any information with third parties nor use them to create unauthorized copies. *See id.* (citing, inter alia, ¶ 72).

While the facts in the present case bear considerable resemblance to *Hall*, 705 F.3d 1357, and *Bytemark*, 342 F. Supp. 3d 496, the information at issue here was arguably more widely accessible than the relevant information in those cases; for example, the

designs were available online with their exact measurements depicted. Doc. 72-4, Ex. B at 3, 8. The Defendants argue that "if [they] had never contacted Plaintiff, they could have gone to its website and copied its unpatented features from the drawings, photos, and CAD drawings[8] thereon, or examined it in Plaintiff's showroom." Doc. 81 at 7.

That said, at this stage of the litigation, the Court finds that RBW has stated a plausible claim for unfair competition. Even though images and measurements of the Pastille sconce were publicly available, it is at least plausible that the Defendants would not have been able to copy RBW's designs if not for the samples RBW sent them, which were provided based on the Defendants' representations that they were interested in purchasing the sconce for the Moxy Hotel. *See, e.g.*, Doc. 66-7, Ex. G at 2. This is further supported by RBW's recognition of the existing work that it had done for other Moxy Hotel locations, as evidenced by an email where one of its employees wrote, "[l]ook forward to working with HPG on another Moxy project!"[9] *Id.* at 7. Though RBW did not mention the Defendants with whom it worked on the previous Moxy project in its email exchange with HPG, it is at least plausible that RBW was relying on its business relationship in those communications. Indeed, this conduct falls under the established misappropriation theory for unfair competition claims under New York law. *See, e.g.*, *E.J. Brooks Co. v. Cambridge Security Seals*, 31 N.Y.3d 441, 449 (2018) ("The essence of the misappropriation theory is not just that the defendant has 'reap[ed] where

---

[8] The Defendants assert that the photographs of the sconce and its design could be downloaded as 3D CAD drawings. *See, e.g.*, Doc. 81 at 5. A CAD drawing is a "Computer Aided Design" drawing which depicts an item's design in detail. *See, e.g.*, *Hamilton Beach Brands, Inc. v. Sunbeam Products, Inc.*, 726 F.3d 1370, 1378 (Fed. Cir. 2013).

[9] RBW also offers evidence from its previous dealings with Lightstone for the Seventh Avenue Moxy Hotel to indicate that the samples were proprietary and confidential. *See* ¶¶ 66–68; Doc. 66-6, Ex. F. However, the Court finds that evidence immaterial to the instant claim. Although Lightstone had previously recognized that shop designs for other RBW products were proprietary and confidential, such evidence does not establish that the Defendants here knew (or should have known) that the designs in the present case were proprietary and confidential. Furthermore, though the Defendants argue that such evidence actually contravenes RBW's claim and instead indicates that RBW *did not* consider the Pastille sconce's design to be confidential, *see* Doc. 81 at 9, the Court does not find that evidence relevant to the instant motion for either party.

it has not sown,' but that it has done so in an unethical way and thereby unfairly neutralized a commercial advantage that the plaintiff achieved through 'honest labor[.]'" (alteration in original) (quoting *International News Service v. Associated Press*, 248 U.S. 215, 236, 239–40 (1918))).

The Defendants are correct that "the mere act of copying would not amount to unfair competition." *Bose Corp. v. Linear Design Labs, Inc.*, 467 F.2d 304, 310 (2d Cir. 1972) (citing, inter alia, *Sears*, 376 U.S. 225). If the Moxy Hotel had managed to use RBW's designs after accessing them publicly, without ever consulting with RBW, the Defendants may well have been correct that RBW would have no cognizable claim for unfair competition under New York law. However, because the complaint alleges that the Defendants represented to RBW that they were interested in working with RBW to obtain the Pastille sconces for the hotel's guestrooms, that the Defendants solicited and received samples of those fixtures, and that they then outsourced to other designers to produce similar designs without notifying RBW, the Court finds that RBW has at least stated a plausible claim establishing the requisite level of bad faith for unfair competition under New York law.[10] Though the Defendants, citing *Twombly*, 550 U.S. at 557, argue that the

---

[10] RBW also briefly argues that the Defendants exhibited bad faith by violating the Terms and Conditions pursuant to which the sconce samples were provided. *See, e.g.*, Doc. 78 at 26–27. The Defendants argue that the terms and conditions attached to the invoice could not be unilaterally introduced by payment of an invoice. *See* Doc. 72-1 at 25. In support of the Defendants' claim that the terms and conditions of the invoice did not create any obligations for them, they cite *National Machinery Exchange, Inc. v. Peninsular Equipment Corp.*, 106 Misc. 2d 458 (N.Y. Sup. Ct. 1980) and *Durso v. Baisch*, 830 N.Y.S.2d 327 (N.Y. App. Div. 2007). However, these cases are not directly applicable. In *Peninsular*, the court found that a jurisdiction clause in an invoice was not enforceable because it was a "significant" term that would "materially alter" the contract's terms absent clear intent. *See* 106 Misc. 2d at 459–60. In *Durso*, the Appellate Division upheld the Supreme Court's finding that the parties failed to set forth all of the material terms of a purported employment contract in writing. *See* 830 N.Y.S.2d at 328. Moreover, that case did not involve an invoice. *See generally id.* In both of these cases, enforcing the terms provided would have significantly altered the meaning of the parties' preexisting agreements. Conversely, the statement on the invoice in the present case would not have materially altered the agreement. Courts applying New York law generally recognize that "[a]s between merchants, inclusion of terms in the seller's invoice, without protest from the buyer on receipt, makes the invoice terms the terms of the contract." *Top Banana, L.L.C. v. Dom's Wholesale & Retail Center, Inc.*, No. 04 Civ. 2666 (GBD) (AJP), 2005 WL 1149774, at *3 (S.D.N.Y. May 16, 2005) (citing, inter alia, N.Y. U.C.C. § 2-201(2)). In any event, the Court need not determine whether the Defendants' violation of the terms and conditions contained in the invoice constitutes "bad faith," as there are independent grounds to support the bad faith claim as discussed here.

pleaded conduct here could "just as easily [lead] to an inference of innocent parallel conduct," Doc. 81 at 10, the Court finds this characterization of the *Twombly* standard inapt. Instead, courts have long recognized that a well-pleaded complaint may proceed even if the Court believes actual proof of those facts to be improbable and that recovery is unlikely. *See Twombly*, 550 U.S. at 556. Moreover, at this stage, the Court draws all reasonable inferences in RBW's favor. *See Koch*, 699 F.3d at 145.

For these reasons, the Court finds that RBW has stated a plausible claim for unfair competition pursuant to New York law.

### C. The Application of the Unfair Competition Claim to All Defendants

The Defendants' final argument in support of their motion to dismiss is that RBW cannot plausibly plead that each Defendant is responsible for the alleged conduct constituting unfair competition. *See* Doc. 72-1 at 26–27. They argue that the complaint is "fatally deficient because it improperly attempts to conflate all parties so that the specific behaviors of disparate parties can be lumped together." *Id.* at 26. Because HPG, the sole Defendant who has not moved to dismiss, was the only party directly involved in "virtually all of the purported interaction that Plaintiff relies on," the Defendants argue that there are no grounds for the unfair competition claim against all five of them. *Id.*

At this stage of the litigation, the Court finds that RBW has stated a plausible claim against Lightstone and Bowery Street through its agency relationship with HPG.[11]

---

[11] In its opposition memorandum, RBW relies at length on the existence of another complaint in a nearly identical case against Defendants Lightstone, Boyd, and HPG, in *Roll & Hill, L.L.C. v. HPG International, L.L.C., Michaelis Boyd, Inc., Marriott International, Inc. and The Lightstone Group, L.L.C.*, No. 24 Civ. 7492 (JHR) (S.D.N.Y. Oct. 3, 2024). *See generally* Doc. 78. In that complaint, also brought in this district, another lighting manufacturer, Roll & Hill, L.L.C. ("Roll & Hill"), alleged that those three Defendants, in addition to Marriott International, L.L.C., which it alleges is an affiliate of the Moxy, "collectively reached out to Roll & Hill, obtained pricing information for [Roll & Hill's] lighting fixture, obtained a sample of the fixture, and then sent the sample overseas . . . to create a cheap knockoff which was inevitably placed in hundreds of rooms at the Moxy Hotel." *Roll & Hill*, No. 24 Civ. 7492 (JHR), Doc. 6 ¶¶ 1, 8. The allegations in that complaint also involved the same Moxy Lower East Side at issue here, and occurred at the same time as the incidents in this case. Doc. 78 at 8. As a result, RBW argues that the Defendants in the present case acted as part of a broader scheme to misappropriate the resources of legitimate lighting manufacturers by misrepresenting why they obtained samples that were not publicly available from these businesses, in turn diverting business opportunities from them. *Id.* at 16–17. However, such evidence is

In the initial email exchange between HPG and RBW, HPG employee Taryn Jones expressly stated, "I am the purchasing agent for the Moxy Bowery hotel." Doc. 66-7, Ex. G at 2. RBW had worked with Lightstone previously at a different Moxy location, ¶¶ 65– 66, and it is entirely plausible that RBW would have recognized that Lightstone (and Bowery Street, as its alleged alter ego, ¶ 17) would be involved in purchases for the hotel's new location given that it owns and operates the Moxy Hotel. ¶ 13. Though the Defendants are correct that the communications between HPG and RBW make no direct reference to Lightstone, Doc. 72-1 at 23, the Court, drawing all reasonable inferences in RBW's favor, finds it plausible that an agency relationship was known or at least reasonably inferred by RBW at the time of the relevant communications. Furthermore, the email exchange explicitly establishes that Defendant Boyd would be the interior design firm for the project. *See* Doc. 66-7, Ex. G at 4.

Moreover, the Defendants assert that Stonehill was merely an "architectural firm" that was unaware of the interactions between RBW and HPG and that "[t]here are no facts pled about the nature of the relationship between Stonehill such that HPG's specific communications with RBW could be imputed to Stonehill." Doc. 72-1 at 26. On the contrary, however, the complaint plausibly alleges that Stonehill was aware that the Moxy Hotel would use a knockoff version of RBW's product, as evidenced by its design specifications that include a link to RBW's website and specify that the design actually used would be "bespoke," made by another "specialist supplier." ¶ 83; Doc. 66-4, Ex. D.

---

not part of RBW's complaint and does not constitute evidence on the merits in this case. *See, e.g., International Star Class Yacht Racing Association v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 70 (2d Cir. 1998) (internal citation and quotation marks omitted) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."). In any event, *Roll & Hill* did not result in a determination on the merits. Instead, Roll & Hill voluntarily dismissed its complaint against defendant Boyd with prejudice on January 10, 2025, against defendants Lightstone and Marriott with prejudice on February 14, 2025, and against defendant HPG without prejudice on February 26, 2025. *See Roll & Hill,* No. 24 Civ. 7492, Docs. 40, 47, and 48, respectively.

While the complaint does not contain robust direct allegations of each Defendant's particularized role in the alleged misappropriation scheme, RBW argues that the exact details of the motivations for and internal communications surrounding the Defendants' actions may be outside RBW's purview prior to discovery. *See* Doc. 78 at 29. Thus, RBW may plead these allegations "upon information and belief" as it has in the present complaint. *See Arista Records, L.L.C. v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal citations and quotation marks omitted) ("The *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible[.]"). For example, while Defendant PTY is only minimally discussed in either party's submissions, *see generally* Docs. 72-1, 78, 81, the Court finds it plausible that additional evidence could reveal that the Defendants directed PTY to create a knockoff of RBW's designs. At a minimum, PTY's LinkedIn post stating its involvement in the Moxy Hotel's designs implies a relationship with the other parties. ¶ 43. Drawing all reasonable inferences in RBW's favor at this stage, the Court finds it at least plausible that, with HPG as an agent, Lightstone and Bowery Street directed the other Defendants, in bad faith, to knowingly produce knockoff designs of RBW's samples. In sum, the Court finds that RBW has plausibly alleged claims for unfair competition against each of Stonehill, Boyd, Lightstone, Bowery Street, and PTY.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED. The parties are directed to appear for a conference on July 23, 2025 at 2:30 p.m. in Courtroom 619 of

the United States Courthouse, 40 Foley Square, New York, NY 10007.  The Clerk of

Court is respectfully directed to terminate the motion, Doc. 72.

It is SO ORDERED.

Dated:     July 7, 2025
              New York, New York

_____
       EDGARDO RAMOS, U.S.D.J.